IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | \| |
| v. | \| CRIMINAL CASE NUMBER: |
| NOOR ALDIEN ALABED and | \| 1:19-CR-00089-MHC-JSA |
| ASSIM ALABED, | \| |
| Defendants. | \| |

**ORDER AND REPORT AND RECOMMENDATION**

Defendants are charged in a money laundering and wire fraud conspiracy. Before the Court are Defendants' Motions to Dismiss the Indictment [42][63] and for a Bill of Particulars [43][64]. For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the Motions for Bill of Particulars [43][64] and **RECOMMENDS** that the Motions to Dismiss [42][63] be **DENIED**.

### I.   BACKGROUND

The Indictment [15] alleges that the Defendants engaged in financial transactions with retail gift cards that had been illegally obtained by others, through fraud schemes and/or through computer "hacking" of gift card providers' computer networks. *Id*. ¶ 12. The Indictment provides specific description of the computer crimes and fraud schemes by which other alleged criminals originally

allegedly obtained the gift cards. *Id.* ¶¶ 13-15. For purposes relevant here, the Court need only note that the Defendants are not alleged to have participated in those schemes. The Defendants' alleged crimes, rather, related solely to their alleged subsequent transactions in those gift cards that they allegedly knew to reflect illegal proceeds.

The Defendants allegedly used Bitcoin cryptocurrency to purchase these gift cards at below their stored value, and then allegedly engaged in various methods to liquidate the value of these cards while concealing that these cards were illegally obtained. *Id.* ¶ 16. The Defendants allegedly used the cards to purchase electronics and other consumer products from online retailers, and then re-sold those items, often at artificially low prices, through their own online third-party marketplace stores. *Id.* ¶ 17. Sometimes, the Defendants would purchase these items again from themselves in circular transactions, i.e., from their own online marketplace stores, using additional gift cards, and did so using fake names and addresses. *Id.* ¶ 18. In other instances, the Defendants would re-sell the fraudulently-obtained gift cards at a higher value than what they paid for them (but lower than the face value). *Id.* ¶ 19. In some instances, the Defendants would allegedly purchase a product with a fraudulently-obtained gift card, then seek a full refund from the retailer, who often would provide a refund in the form of a new gift card that was no longer associated with any criminal activity, and which was

therefore clean to use in later transactions. *Id*. ¶ 20. The Indictment also alleges that "when asked by the retailers for information regarding the source of the gift cards the Defendants trafficked in, the Defendants gave false and misleading answers and provided deceptive documentation—or no documentation at all—to conceal the illegal source of those gift cards." *Id*. ¶ 23.

The indictment charges two conspiracy counts based apparently on the same series of gift card transactions: money laundering conspiracy in violation of Title 18, United States Code, Section 1956(h), and wire fraud conspiracy in violation of Title 18, United States Code, Section 1349.

## II. DISCUSSION

### A. *Motions to Dismiss*

The Indictment includes the same conduct—allegedly lying to retailers as to the source of gift cards—as part of both the money laundering and fraud conspiracies. *See* Indictment [15] ¶¶ 23, 31. According to the Defendants, this overlap impermissibly merges the two crimes of money laundering and wire fraud. Defendant points out that

> the predicate act of wire fraud must be "complete" before the money laundering occurs. Money laundering cases use the language of time to describe the relationship between the money laundering and the predicate offense—these cases state that the predicate offense must be "completed" or "earlier" or "antecedent."

Def. Br. [63] at 2 (gathering authority).

The legal principle asserted by the Defendants is well-established. Generally, transactions are not considered "money laundering" unless, among other things, they involve proceeds of separate criminal activity that has already happened. Therefore, no money laundering can occur prior to the completion of the predicate offense(s) that generated the proceeds to be laundered. All of the Defendants' legal authorities stand for this undisputed legal proposition. For example, Defendant cites *United States v. Christo*, 129 F.3d 578 (11th Cir. 1997), in which the Eleventh Circuit stated that the act of depositing fraudulent checks could not be considered "laundering" the proceeds of bank fraud. As the court pointed out, the offense of bank fraud is not completed until a fraudulent check is deposited, so no act of "laundering" could occur until *after* that initial fraudulent act. To characterize the deposit as both bank fraud and also laundering the proceeds of bank fraud would run afoul of the basic temporal line separating these crimes. *Id*. at 580.

This Indictment, however, is not guilty of a *Christo* problem. The wire fraud scheme in the Indictment is unrelated to the previous, underlying criminal activity that generated the illegal gift cards. Indeed, the Indictment does not even purport to charge Defendants with involvement in any of the predicate elderly fraud schemes, business-to-business fraud schemes, or computer intrusion offenses that supposedly funded these cards. *See* Indictment ¶¶ 13-15. Rather, the

Indictment alleges that *other* unspecified criminals engaged in these schemes and fraudulently obtained gift cards funded by victims, before the Defendants acquired those cards. Importantly, therefore, the money laundering scheme alleged in Count One is *not* predicated on the laundering of proceeds of the wire fraud scheme in Count Two. In other words, the money laundering count properly charges that Defendants engaged in financial transactions that were "separate from and in addition to the underlying criminal activity." *Christo*, 129 F.3d at 580. Thus, the Indictment fully complies with the temporal principles established by *Christo* and Defendant's other cases, that is, that "the underlying criminal activity must be complete before money laundering can occur." *Id*. at 580.

    This is not to say that the Indictment contains no overlap. Obviously, there is some overlap in the conduct charged in Counts One and Two. The Indictment cites the same general sets of lies and misrepresentations by Defendants to retailers, as part of both the schemes. This overlap is very different in nature than the sort of temporal "merger" suggested by the Defendants. Instead of "merging" the money laundering and the predicate frauds that generated the proceeds being laundered, the Indictment instead charges that the same conduct allegedly violated two different statutes at the same time. Defendants cite no cases and make no argument specifically addressing this very different issue.

Although Defendants have not addressed this concern, the Government notes in its response, and the Court recognizes, that charging the same conduct as multiple crimes can in some circumstances lead to a multiplicitous indictment. *See United States v. Howard*, 918 F.2d 1529, 1532 (11th Cir. 1991) ("An indictment is multiplicitous if it charges a single offense in more than one count."). A multiplicitous indictment implicates the constitutional protection against double jeopardy, may raise concerns as to the imposition of multiple sentences for the same crime, and may prejudice the jury by suggesting that a defendant has committed several crimes and not just one.  *See United States v. Smith*, 231 F.3d 800, 815 (11th Cir. 2000).

The Court cannot find any grounds to dismiss the Indictment, however, on grounds of multiplicity.  First, Defendants have raised no argument to dismiss on this ground, and chose not to even reply to the Government's response that suggested that Defendants' argument appeared to sound in multiplicity.  *See* Gov't Br. [67] at n. 7.  Second, the law does not necessarily prohibit applying multiple charges to the same or overlapping conduct.  Indeed, under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and its progeny, the courts are to presume, absent evidence of congressional intent to the contrary, that "[a] single act may constitute two different offenses for double jeopardy purposes so long as two different statutes were violated and each requires an element that the

other does not." *United States v. Claudio*, 44 F.3d 10, 13 (1st Cir. 1995); *United States v. Hassoun*, 476 F.3d 1181, 1185-86 (11th Cir. 2007) (applying *Blockburger* elemental test to reject a multiplicity challenge to indictment that included overlapping conspiracy charges under different statutes, but which relied on some of the same evidence).

Here, money laundering (which requires proof that a transaction involved proceeds of prior specified criminal activity) and wire fraud (which requires proof of fraudulent activity and use of the interstate wires) include substantially unique and different elements.  Absent any showing of congressional intent otherwise—which Defendants fail to show—the Court cannot find a multiplicity problem that requires dismissal. Thus, Defendants' motions to dismiss [42][63] should be **DENIED**.

### B. *Motions for Bill of Particulars*

The purpose of a true bill of particulars is threefold: "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985) (citations omitted). A bill of particulars, properly viewed, supplements an indictment by providing the defendant with information necessary for trial preparation even if not required to be included in the indictment

itself. *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (italics omitted).

Generalized discovery, however, is not an appropriate function of a bill of particulars, and is not a proper purpose in seeking the bill. *Id*., at 1442; *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981). Similarly, the Eleventh Circuit has held that a bill of particulars should not "automatically [be] accorded the status of a supplement to an indictment." *United States v. Anderson*, 799 F.2d 1438, 1442 (11th Cir. 1986). Furthermore, a defendant is not entitled to a bill of particulars "with respect to information which is already available through other sources," including discovery. *United States v. Martell*, 906 F.2d 555, 558 (11th Cir. 1990); *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir.), *modified on other grounds*, 801 F.2d 378 (11th Cir. 1986).

Here, Defendants seek a bill of particulars that identifies: (1) all conspirators; (2) all of the unnamed "criminals" who perpetrated the underlying elderly fraud, business-to-business fraud, and computer hacking schemes that generated the illegal proceeds laundered by Defendants; (3) each of the false or misleading statements or omissions referenced in the Indictment and a factual basis for the falsity of the statements; (4) the "fraud detection systems" referenced in the Indictment; (5) the on-line retailers referred to in paragraph 31 of the Indictment

(as supposedly the target or victim of false statements); and (6) the specific gift cards, numbers or unique codes that were fraudulently purchased.

The Government responds that the Indictment adequately notifies the Defendant of the nature of the charges and that, to the extent the requested information is known to the Government, the Government has produced discovery that includes that information.  The Government provides no specifics as to what information is included in discovery.  On the other hand, the Defendants have filed no reply briefs to contest this assertion.

Much of Defendants' request is either moot or meritless.  The Defendants' demand for identification of co-conspirators is moot, because the Court has already specifically ordered the Government to furnish that information as a standard pre-trial ruling.  *See* Scheduling Order [37] at p. 10.  This relief necessarily also requires disclosure of the "criminals" referenced in the Indictment, to the extent those individuals are known to the Government and considered part of any conspiracy.  Many other items are evidentiary details that naturally would be expected to be—and Defendants do not refute are—included in discovery, to the extent they are possessed by the Government.  This would include details as to the specific gift cards purchased by Defendants, the identifications of any specific retailer victims and, any information possessed by the Government as to the

retailers' "fraud detection systems." None of these evidentiary details are crucial for Defendants to understand the charges against them.

The one area in which the Court finds Defendants entitled to additional information is with respect to the allegedly fraudulent statements made in connection with the scheme to defraud. The Indictment states only very generally, and conclusorily, that:

> When asked by the online retailers for information regarding the source of the numerous gift cards they used for their online purchases, the Defendants gave false and misleading answers and provided deceptive documentation—or no documentation at all—to conceal the illegal source of those gift cards and gift card numbers.

Indictment [15] ¶ 31. The Court agrees with Plaintiff that this statement by itself provides insufficient particulars as to the nature of the allegedly fraudulent statements made by Defendants. Such statements obviously would form a key facet of any wire fraud case, and would be a focus of any defense.

Thus, generally, a defendant facing charges of fraud "is entitled to a bill of particulars setting forth each false and fraudulent pretense and representation described generally in the indictment." *United States v. McCoy*, 492 F.Supp. 540, 545 (M.D. Fla. 1980); *United States v. Velez*, 2008 WL 11454798 (S.D.Fla. July 11, 2008) ("As the [alleged false] statements appear to play an integral part of both the prosecution and defense, and the government has put forth no persuasive reason why these statements should not be identified, a bill of particulars is

appropriate."); *Cf. United States v. Youn*, 2015 WL 6693714, *10 (N.D.Ga. Nov. 2, 2015) (Totenberg, J., adopting Report and Recommendation from Brill, M.J.) (denying motion to dismiss on basis of non-specific description of fraudulent statements, because such a deficiency is curable by a bill of particulars, and noting "[i]n fraud cases in other district courts where the indictment has failed to identify specific documents on which the prosecution is based, courts have ordered the government to provide a bill of particulars identifying the specific documents that the government contends are fraudulent.")

The Government does not appear to contest that Defendants are entitled to this information. The Government's only response is to generally assure the Court that all answers have been furnished in discovery. Without more concrete information, however, the Court cannot assume that the alleged false statements have been specifically identified as such in the manner to which Defendants are entitled. The Government's obligation, after all, is not just to hand over reams of voluminous discovery and ask the Defendants to determine for themselves what are the statements that the Government considers to be false. The Defendants are entitled to better particularization of those false statements in the instrument charging them with fraud, or in a bill of particulars.[1]

---

[1] While the Defendants are entitled to better particularization of the false statements or material omissions that form the basis of the wire fraud conspiracy, the Court does not agree that Defendants are entitled by way of a bill of particulars to an

Thus, the Motions for Bill of Particulars are granted to the extent Defendants seek specific notice as to the false statements and/or material omissions they allegedly made in furtherance of the conspiracy or scheme to defraud, as generally referenced in Paragraph 31 of the Indictment. In all other respects, the Motions for Bill of Particulars are denied.

## CONCLUSION

As set forth above, the Court **GRANTS IN PART AND DENIES IN PART** the Motions for Bill of Particulars [43][64] and **RECOMMENDS** that the Motions to Dismiss [42][63] be **DENIED**. **IT IS ORDERED** that the Government furnish the particulars discussed above within **TWENTY-ONE (21) DAYS.**

This matter is otherwise **READY FOR TRIAL**.

IT IS SO **RECOMMENDED** and **ORDERED** this 4th day of December, 2019.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

---

explanation as to the "basis for the alleged falsity." Such an explanation would go beyond providing sufficient notice as to the crimes for which the Defendants are accused, and would extend into the realm of disclosing the evidentiary detail or factual theories supporting the charges. Such disclosures are generally the province of the discovery rules, such as Rule 16 and the Jencks Act.